# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

ADT LLC; and The ADT Security
Corporation,

      Plaintiffs,

      v.                     Case No. 3:26-cv-502

National Sales Partners, LLC,

      Defendants.

## **COMPLAINT**

This case presents a new wrinkle in telemarketing scams. Defendant National Sales Partners, LLC describes itself "as a business development firm that helps companies grow through outsourced sales, customer care, and telecom solutions. Our goal is to generate recurring revenue streams and improve customer engagement so you can scale with confidence." *See* https://nationalsalespartners.com/ What National Sales does not mention is that its customer care and telecom practices include egregious misconduct and consumer deception.

Plaintiff ADT LLC has long maintained and provided 1-800-238-2727 (a.k.a.1-800-ADT-ASAP) to customers and the public for customer care and service needs. This number is well publicized and marketed in ADT customer mailings, material and general internet searches. In concert with ADT's largest competitor, Vivint Smart Home, Inc., National Sales obtained numerous 1-800 phone numbers one-digit off the above number (for example, 1-800-23**7**-2727, versus 1-800-238-2727).

1

Defendant National Sales has registered at least 11 additional numbers that are similarly one digit off the ADT number.

When an ADT customer unwittingly misdials one of the National Sales numbers, deception ensues. The National Sales operator masquerades as ADT, or an affiliate of ADT, and falsely informs the customer that ADT is no longer servicing accounts in the customer's area. To maintain service, the story goes, the ADT customer must upgrade to a related company, Vivint (a chief competitor well known for consumer deception). Over the past several years, this deceptive ploy has hoodwinked numerous into leaving ADT for Vivint.

This case seeks to bring an end to that practice and to compensate ADT for the damages it has caused.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Section 1331 of Title 28 because it presents a federal question under the Lanham Act.

2. This Court has supplemental jurisdiction over the state-law claims also asserted in this action pursuant to Section 1367(a) of Title 28.

3. Venue lies in this District pursuant to Section 1391(b) of Title 28 because a substantial number of the events giving rise to the claims asserted in this Complaint occurred in this District.

4. This Court has personal jurisdiction over all Defendants because they regularly commit tortious conduct purposefully directed at this District as described

2

in this Complaint. Accordingly, jurisdiction is proper under N.C. Gen. Stat. § 1-75.4 and comports with federal due process.

## FACTS

### I. The Parties.

5. Founded in 1874, ADT is the oldest, largest, and best-known provider of electronic security, automation, and smart home services and equipment in the United States.

6. ADT provides security, automation, and smart-home services and equipment nationwide.

7. ADT currently has more than 6 million residential subscribers.

8. ADT's name and trademarks are registered with the United States Patent and Trademark Office.

9. The ADT Security Corporation is a Delaware corporation with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431. The ADT Security Corporation owns, *inter alia*, all ADT trademarks, including without limitation 21 ADT live word trademarks featuring the letters "A – D – T," registered in the United States Patent & Trademark Office that bear the registration numbers 3251836, 3352491, 710708, 710507, 3515266, 3511263, 3445423, 3909665, 3485321, 3421797, 1034716, 838956, 803247, 846966, 3348663, 3253804, 3445420, 3991449, 3335239, 3335298, and 3427081 ("ADT Trademarks"). The ADT Security Corporation is ultimately wholly owned by ADT Inc., a Delaware corporation whose common stock is traded on the New York Stock Exchange.

10. ADT LLC is a Delaware limited liability company with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431. ADT LLC is an operating company that runs the ADT alarm services business in the United States. ADT LLC uses the ADT Trademarks under license from The ADT Security Corporation. ADT LLC is owned by The ADT Security Corporation.

11. Defendant National Sales Partners, LLC is an Ohio corporation with its principal place of business located at 1300 9th ST, Cleveland, OH, 44114.

## II. The Scheme.

12. For years, unsavory competitors in the home security and automation industry, like Vivint, have engaged in deceptive door-to-door sales practices that involve misrepresenting having an affiliation with the solicited homeowner's existing alarm-system provider.

13. The basic gist of this scheme is as follows. A trained sales representative of a dishonest competitor identifies that a homeowner uses ADT because of a yard sign. The representative knocks on the door and says (as one variation of the playbook) that ADT is no longer servicing the area, therefore an immediate upgrade to X company is necessary to avoid an interruption in service. This representation induces the customer to sign a contract with the new company, and the existing equipment is gutted and replaced.

14. Months later, the customer is puzzled when he continues receiving bills from both his previous company and the new one. Why would he still receive an ADT bill when he switched over because ADT is no longer servicing the area? This prompts

4

frustrating calls to both companies to rectify the situation, during which the customer eventually realizes ADT still services the area and he was scammed to switch to a competitor of ADT.

15. The customer loses time and money; ADT loses a customer.

16. ADT's goodwill is severely harmed because the customer is understandably furious with both companies for being put in an unenviable spot of battling with both companies to untangle a financial mess.

17. A full history of this behavior—and the many other actionable misconduct these companies engage in—is ably summarized in a recent Fourth Circuit opinion affirming a $189.7 million jury verdict from this Court against Vivint. *CPI Sec. Sys., Inc. v. Vivint Smart Home, Inc.*, 145 F.4th 390 (4th Cir. 2025).

### A. *A New Page to the Deceptive Playbook – Affiliation Misrepresentation Through Imposter Phone Numbers.*

18. Defendant National Sales—working with ADT's competitor Vivint—has added a new page to this industry's already dense deceptive-sales playbook.

19. As stated earlier, ADT has registered 1-800-238-2727 (1-800-ADT-ASAP) as the number for customers to call nationally for sales and service issues.

20. This number is well publicized to customers and the public in marketing material, advertisement, customer mailings, and general internet searches.

21. ADT customers and potential customers call this number for innumerable reasons—potential upgrades, billing questions, service issues, etc.

22. ADT receives approximately a million calls a month to this number from its customer base and the public every year.

5

23. To freeride on ADT's trust and goodwill, Defendant National Sales has obtained and registered numerous phone numbers that are a single digit off ADT's 1-800-238-2727. One example of this is 1-800-23**7**-2727. Another is 1-800-238-272<u>8</u>.

24. Defendant National Sales has at least 10 other registered numbers that are similarly one-digit off the ADT number.

25. The purpose of closely mimicking the ADT number is obvious: customers and the public will sometimes misdial ADT, and, when they do, National Sales has an easier target to scam because the customer is more likely to believe the word of the company she has already entrusted with her business.

26. In addition, it is well known to ADT's competitors, and marketers like Defendant National Sales in general, that "switchover" customers (that is selling to a competitor's customer) are easier targets because those customers already appreciate the inherent value of an alarm system.

27. While there are wrinkles to Defendant National Sales's deceptive playbook to switch a customer from ADT to Vivint, most involve stating or implying an affiliation between the ADT and Vivint.

28. For example, when Defendant National Sales answers a misdial, a customer may describe an issue with her alarm-system functionality. After listening to the problem, the Defendant National Sales employee then represents to the customer that Plaintiff ADT is no longer servicing that zip code and has assigned Vivint to take over those accounts.

6

29. To maintain service, the customer will need to upgrade her system and an appointment to do so must be set with Vivint.

30. From there, Defendant National Sales hands the baton to Vivint, which sends sales and installation personnel to the customer's home. Once convinced of the need to switch, Vivint then rips out the ADT equipment, installs a new system and (typically after these steps) has the customer execute paperwork locking the customer into a new contract with an entirely different service provider.

31. The customer eventually realizes she has been duped and is now stuck with two contracts — the original one with Plaintiff ADT, and the new one with Vivint.

32. This realization often occurs after countless phone calls to both companies.

33. ADT is damaged because it loses a customer, waives the account balance due, and has its goodwill trampled upon by being associated with predatory business practices that often leave consumers angry with both companies.

34. Even in cases where the customer is or becomes aware of a lack of affiliation between Vivint and ADT by the close of the sale, ADT is injured by Defendant National Sales's false and misleading statements causing initial interest and confusion.

35. By falsely claiming an affiliation with ADT in sales to consumers, Defendant National Sales further injures ADT by taking for National Sales the essential benefit of being an ADT affiliate without paying any royalty or other

7

consideration to ADT for the claim of affiliation. This is a benefit for which hundreds of *licensed* ADT dealers pay substantial financial consideration to ADT. National Sales pays nothing by using ADT's name and brand for the benefit of National Sales, which is compensated by Vivint for successfully switching ADT customers over to Vivint.

36. The National Sales agents' false sales pitches also injure ADT's goodwill, reputation, and trademarks. Some customers are left with the false belief that ADT is out of business, that ADT has been acquired, that their ADT alarm systems are outdated and vulnerable to burglars, or that Vivint has taken over ADT accounts. Others understand the false pitch for what it is, but reconsider their ADT service because being an ADT customer has made them a target of scammers. Indeed, some customers have reported ceasing all such security services (regardless of provider) as a result of falling victim to these types of false and misleading practices. Predictably, certain customers wrongly blame ADT for the Defendant's conduct and never come to understand the lack of affiliation between National Sales/Vivint and ADT.

37. The constant need to assist ADT customers in fixing problems resulting from the National Sales agents' deceptive sales conduct imposes a substantial cost on ADT to maintain and train customer service agents appropriately. In effect, ADT is forced to constantly police this behavior and attempt to educate the public to prevent it. Defendant is also liable for these costs.

38. The confusion, both at the outset of, and throughout, a sales transaction harms ADT by allowing National Sales to freeride on ADT's goodwill with its

customers to gain their attention and trust. Any later efforts to clarify the lack of ADT affiliation do not cure the confusion that has already occurred at the outset of the transaction.

39. Customers often blame themselves for falling victim to these false and misleading sales tactics. Such self-blame also contributes to an under-reporting of deceptive sales by National Sales and Vivint. This self-blame also harms ADT's goodwill and reputation because customers believe they never would have fallen victim if they did not have an ADT system in their home in the first place.

40. ADT has been fighting these problems for many years. The conduct not only harms ADT and its customers, it harms the entire industry by causing the consuming public to distrust home alarm providers—companies which make their keep by instilling a sense of security and trust in their customers.

41. National Sale's own internal records will show how widespread and common this behavior is. Many ADT customers subject to National Sale's practices never complain to ADT. Rather, upon learning of the fraud, they complain to National Sales or Vivint.

42. National Sales's business records will show all the numbers they maintain attempting to mimic ADT's numbers and the volume of calls each number receives. All misdirected calls damage ADT because they free ride off its brand and reputation, and divert existing and potential business intended for ADT to its competitor.

## C. Representative Examples of National Sales's Deceptive Conduct.

43. On or about December 19, 2023, Gloria McCorkle of Charlotte, North Carolina called what she believed to be ADT's 1-800 number hoping to reach ADT. When she did, an individual answered the call. When Ms. McCorkle began to explain the reason for the call, the representative from National Sales stated that Vivint was taking over ADT accounts and now acting on ADT's behalf. Relying on these representations, Ms. McCorkle permitted the National Sales representative to send Vivint to her home and install equipment. Ms. McCorkle later discovered that National Sales and Vivint were not affiliated with ADT and that she had been switched to a competing service without her consent.

44. On or about September 18, 2025, Lawrence Burke of Charlotte, North Carolina attempted to contact ADT's 1-800 number. After starting the conversation, however, the National Sales representative stated that Vivint had assumed control over ADT services in his area. Defendant's representatives scheduled Vivint for an in-home appointment and represented that they needed to replace or upgrade ADT's equipment. Relying upon these statements, Mr. Burke permitted Defendant to access his home and replace his existing equipment. Mr. Burke later learned that Defendant had no such authorization from ADT and had misrepresented its role to induce the switch.

45. On or about October 13, 2025, Mary Richardson of Charlotte, North Carolina contacted what she believed to be ADT's customer service number to address issues with her existing alarm system. National Sales agents answered,

10

masquerading as ADT affiliates, and falsely advised Ms. Richardson that ADT no longer serviced her area. She was instead required to transition to Vivint. Defendant subsequently arranged for Vivint to install new equipment. Ms. Richardson later learned that National Sales had actually helped Vivint dupe her into switching to a competitor.

46.     On or about September 4, 2025, Tom Coyle of Charlotte, North Carolina contacted the telephone number listed on his ADT equipment seeking assistance with a low-battery issue. An individual who represented that he was affiliated with ADT answered and, during the call, advised that Mr. Coyle's system required replacement. The National Sales rep also told Mr. Coyle that ADT had subcontracted with another provider for the work. Mr. Coyle became suspicious during the interaction and terminated the call before any installation occurred. He later confirmed with ADT that the statements made by Defendant's representative were false.

47.     On or about September 17, 2025, Deborah Lee of Charlotte, North Carolina attempted to contact ADT for service but instead reached National Sales through a "misdirected" call. Defendant's representative falsely stated that ADT no longer serviced her area and that she would need to switch providers to Vivint. Relying on these representations, Ms. Lee agreed to change systems. Ms. Lee subsequently learned that Defendant's representations about Vivint's affiliation with ADT were false.

48.     On or about July 29, 2025, Pamela Bingham of Dallas, North Carolina thought she had called ADT to request an equipment upgrade. During that

11

interaction, however, National Sales's representatives falsely represented that Ms. Bingham's existing ADT equipment was outdated and that ADT would not provide further service in her area. Defendant's representatives then suggested she should upgrade to Vivint to fix the issue. Based on this representation, Ms. Bingham did so. Ms. Bingham later learned that she had not spoken with ADT and instead been taken advantage of in the conversation with National Sales, and subsequent interactions with Vivint.

49. These examples are typical of National Sales's pattern of misconduct in North Carolina and the rest of United States. Indeed, ADT has received dozens of similar complaints scattered across the country. And, no doubt, National Sale's phone records with greatly multiply the evidence of the breadth and scope of this misconduct.

**CLAIMS**

**COUNT I**
**UNFAIR COMPETITION IN VIOLATIONOF THE LANHAM ACT,**
**15 U.S.C. § 1125 (a)(1)(A) and (1)(B)**

50. ADT incorporates the paragraphs above as if set forth fully herein.

51. The ADT Security Corporation owns the ADT Trademarks. ADT LLC uses the ADT Trademarks under license from The ADT Security Corporation. ADT has used the tradename "ADT" for over a hundred years. ADT and its marks are injured by any effort by the National Sales to confuse ADT's customers as to the affiliations of the National Sales and Vivint with ADT.

52. National Sales preys off consumer trust and goodwill in ADT by setting up phone numbers one digit off ADT's customer support number, and then

12

representing an affiliation with ADT to confuse ADT's customers as to the agents' true affiliation. This is done to interest the customers in their pitches, win the customers' trust, and allow its partner Vivint to gain access to their homes and convert loyal customers to a competitor.

53. In fact, neither National Sales nor Vivint represent ADT, nor are they affiliated in any manner with ADT.

54. National Sales makes these false representations to ADT's customers with the intent of deceiving ADT's customers as to a relationship or affiliation with ADT that does not exist, and that has never existed.

55. These false and misleading statements are likely to confuse consumers regarding National Sales's apparent (but false) affiliation with ADT in the initial stages of a sale. In fact, as set forth, they already have created confusion among consumers and will continue to do so if permitted to continue.

56. Some ADT customers, initially confused by National Sales, eventually realize by the end of the sale that the sales agents represent Vivint and its partner, National Sales, not ADT. But many do not and remain confused at the point of sale, signing contracts with Vivint in the mistaken belief that they are contracting with ADT or one of its affiliates. Even when the customer is initially confused but later comes to understand the sales agent is not affiliated with ADT, ADT is still damaged by this freeriding on ADT's name and brand recognition.

57. In addition to such affiliation misrepresentations, the National Sales's agents make other false and misleading misrepresentations in their commercial

13

promotion of their services regarding the nature, characteristics, and qualities of Vivint and/or ADT's goods and services, as detailed more specifically above. These material misrepresentations and omissions divest customers of freewill and wrongly cause customers to switch from ADT to Vivint.

58. ADT has been and will continue to be damaged as a result of the false representations vis-a-vis the confusion of the market for ADT's goods and services, by the disruption of ADT's relationships with its customers, by the diversion of ADT's customers, by ADT's lost royalties, by ADT's loss of control of the use of its brand in the market, and by damage to ADT's goodwill and reputation as a reliable provider of security systems.

59. ADT is entitled to an award of compensatory damages, as well as Defendants' profits, attorney's fees, and the costs of this action pursuant to 15 U.S.C. § 1117(a). The Court, pursuant to the discretion confided to it under this section of the Act, should also consider enhancing these damages to compensate ADT fully for its losses.

WHEREFORE, ADT respectfully requests that the Court enter judgment in its favor and against the National Sales, and award the following relief:

 a. Compensatory damages, in an amount to be established at trial;

 b. An accounting of the Defendant's profits resulting from its deceptive practices, and payment of such profits to ADT;

 c. Attorney's fees and costs incurred in the prosecution of this action, as provided by 15 U.S.C. § 1117(a);

d. Pre- and post-judgment interest; and

e. Such other and further relief as the Court may deem appropriate in the circumstances.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACT OR BUSINESS RELATIONSHIPS

60. ADT incorporates the paragraphs above as if set forth fully herein.

61. ADT maintains valid and enforceable contracts and business relationships with its customers.

62. ADT customers regularly use its advertised and publicly available 1-800 number for customer service and other reasons.

63. National Sales is aware of ADT customers' trust in and use of the ADT 1-800 number and preys upon that trust by capturing misdialed calls to communicate with ADT customers who are more likely to believe National Sales's misrepresentations because of their existing relationship with ADT.

64. National Sales thus has knowledge of the contractual and business relationship between ADT and its customers and has laid a trap to capture misdialed customer calls intended for ADT and divert those customers to Vivint.

65. Despite knowledge of the customer's contractual and business relationship with ADT, the National Sales representatives intentionally and without valid justification interfere with the ADT customer relationship using improper means, by misleading ADT's customers into believing that National Sales and Vivint represent ADT, that both are affiliated with ADT, that they are speaking at ADT's

15

direction, that they work for the companies that made the ADT alarm equipment installed in the customers' homes, or that ADT has otherwise blessed the National Sales and Vivint to work on ADT's behalf.

66. Once the agents induce ADT customers to believe that they have an existing business relationship with ADT, they facilitate customers toward contracts with a competitor and allow Vivint to install alarm systems, misleading ADT customers to believe that they are receiving new ADT equipment from ADT, an ADT affiliate, an ADT successor, that Vivint is assuming the ADT account, or that the customer has no choice but to permit the transaction to go forward if he or she wishes to continue to have operational alarm-monitoring services. Further, National Sales's agents sometimes procure the breach of the ADT contract upon the promise that Vivint will "buy out" the remaining term of their ADT contract by paying to the customer an amount equal to the remaining obligation on their ADT contract.

67. Defendant's intentional and unjustifiable interference with ADT's business relationships have caused ADT to suffer irreparable harm and damages in the form of lost goodwill and lost profits. ADT is damaged by this unlawful conduct by losing revenue streams that otherwise would remain with ADT.

WHEREFORE, ADT respectfully requests that the Court enter judgment in its favor and award the following relief:

      a. Compensatory damages, in an amount to be established at trial;

      b. Punitive damages in a sum sufficient to deter the Defendant from engaging in further deceptive sales tactics;

c. Pre- and post-judgment interest; and

d. Such other and further relief as the Court may deem appropriate in the circumstances.

## COUNT III
## COMMON LAW UNFAIR COMPETITION

68. ADT incorporates the paragraphs above as if set forth fully herein.

69. National Sales has engaged in common law unfair competition by engaging in unfair and deceptive misconduct by obtaining numerous 1-800 numbers intended to prey on misdials from ADT customers. Many of these callers are unsuspecting and sometimes elderly and infirm customers. National Sales telemarking agents make false sales pitches to ADT's customers that are designed to mislead them into believing that they are acting on ADT's behalf, when in fact they represent a competitor freeriding on ADT's goodwill to interfere with ADT's contracts with its customers, and to sell and install new alarm systems with an unaffiliated competitor. The sales agents also make other material misrepresentations about ADT's as detailed above.

70. The Defendants' actions are contrary to honest practice in industrial or commercial matters. They are prohibited by the alarm industry's own code of conduct. They are independently actionable, *inter alia*, as violations of the Lanham Act and tortious interferences with ADT's contractual relationships.

71. The Defendants' actions are likely to cause confusion among consumers, and have in fact done so.

72. ADT has been injured as a result of the Defendants' actions.

17

73. This behavior has been widespread and systemic and is likely to continue. Accordingly, the Court should award punitive damages in an amount sufficient to deter the Defendants from continuing to engage in unfair competition in the market for electronic security services.

**COUNT IV**
**UNFAIR AND DECEPTIVE TRADE PRACTICES (N.C. Gen. Stat. § 75-1.1)**

74. ADT incorporates the above paragraphs as if set forth fully herein.

75. National Sale's acts and practices described above constitute unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1.

76. National Sales's conduct is immoral, unethical, oppressive, unscrupulous, and substantially injurious to ADT.

77. National Sales has engaged in these unfair and deceptive acts and practices with the intent to mislead ADT customers and to induce them to switch from ADT to Vivint.

78. Vivint's unfair and deceptive acts and practices have proximately caused injury to ADT, including loss of customers, loss of goodwill, and lost profits.

79. Pursuant to N.C. Gen. Stat. § 75-16, ADT is entitled to recover treble damages, as well as its attorneys' fees pursuant to § 75-16.1.

WHEREFORE, ADT respectfully requests that the Court enter judgment in its favor and against the Defendants, and award the following relief:

   a. Compensatory damages, in an amount to be established at trial;

18

b. Punitive damages in a sum sufficient to deter the Defendants from engaging in further unfair competition;

c. Attorneys' fees and costs incurred in the prosecution of this action;

d. Pre- and post-judgment interest; and

e. Such other and further relief as the Court may deem appropriate in the circumstances.

## JURY DEMAND

ADT demands a trial by jury on all issues so triable.

Dated: June 24, 2026.                    Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**

/s/      Caroline M. Gieser

Caroline M. Gieser
NC Bar No. 51610
cgieser@shb.com
1230 Peachtree Street
Suite 1200
Atlanta, Georgia 30309
Tel: (470) 867-6013
Fax: (470) 867-6001
        -and-

Charles C. Eblen (*pro hac vice forthcoming*)
ceblen@shb.com
Jason R. Scott (*pro hac vice forthcoming*)
jscott@shb.com
2555 Grand Blvd.
Kansas City, Missouri 64108
Tel: (816) 474-6550
Fax: (816) 421-5547

        -and-

Eric J. Hobbs (*pro hac vice forthcoming*)

19

ehobbs@shb.com
1899 Wynkoop Street
Suite 375
Denver, CO 80202
Tel: (303) 285-5300
Fax: (303) 285-5301

*Counsel for Plaintiffs ADT LLC and The ADT Security Corporation*

20